CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

NOV 22 2010

JULI A. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| WILLIAM R. HUFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 6:09cv42 |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | By: Michael F. Urbanski |
| Commissioner of Social Security, ) | United States Magistrate Judge |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

William R. Huff ("Huff") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying disability insurance benefits under the Social Security Act ("Act"). Huff seeks an award of disability due to chronic obstructive pulmonary disease ("COPD"), arthritis, and pain from a 1983 car accident. Huff contends that his disability began on December 15, 2001. Huff was last insured under the Act on December 31, 2006. In his decision, the Administrative Law Judge ("ALJ") concluded that, through the date last insured, Huff was not disabled. (Administrative Record "R." at 29.) The ALJ based this conclusion on his finding that Huff had a residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(b) and that Huff was capable of performing past relevant work as a construction contractor. (R. 24, 28.) Huff, who is proceeding pro se, argues that the evidence shows that he is disabled and that the ALJ's decision is not based on substantial evidence. Review of the administrative record reveals that there is no credible evidence to suggest that Huff was disabled from all forms of substantial gainful activity between December 15, 2001, and December 31, 2006, and that the Commissioner's decision is supported

1

by substantial evidence. As such, it is **RECOMMENDED** that the Commissioner's decision be affirmed and the defendant's motion for summary judgment (Dkt. 13) be **GRANTED**.

# I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-62 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the RFC,[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 404.1545(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after considering all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 404.1529(a).

## II

At the time of the hearing before the ALJ on September 23, 2008, Huff was 59 years old. He completed high school and one year of college and last worked as a construction contractor from 1990 to 2001. Huff applied for disability insurance benefits on January 19, 2007. His application for benefits was rejected by the Commissioner initially on April 6, 2007, based on a physical RFC assessment of the state agency physician Donald Williams, (R. 59, 223-29), and on reconsideration on July 11, 2007, based on a review by state agency physician Richard Surrosco. (R. 60, 310-16.) An administrative hearing was convened before an ALJ on September 23, 2008. In determining whether Huff was disabled under the Act, the ALJ found that Huff's COPD, arthritis, and injuries from the automobile accident were severe, (R. 14), but that he retained the RFC to perform a medium range of work and was capable of performing his past relevant work as a self-employed construction contractor. (R. 28-29.) Therefore, the ALJ found that Huff was not disabled.

Huff sought review by the Appeals Council, which denied his request for review on June 5, 2009. He filed this appeal in federal court on August 10, 2009. The Commissioner filed a motion for summary judgment supported by a memorandum on March 31, 2010. Huff, proceeding pro se, responded with a memorandum in opposition to the Commissioner's motion for summary judgment, and filed additional evidence. As such, the Court will construe his submissions as a motion to remand his case to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g).

## III

The issues on this appeal are whether the ALJ's decision is supported by substantial evidence and whether this case should be remanded to the Commissioner under sentence six of

4

42 U.S.C. § 405(g). Review of the evidence in the administrative record reveals that Huff has not met his burden of establishing that he was totally disabled on or before December 31, 2006. Furthermore, Huff has not established that the case should be remanded to the Commissioner under sentence six.

A. Substantial Evidence Supports the ALJ's Decision

In 1983, eighteen years before the alleged onset of disability, Plaintiff was involved in motor vehicle accident resulting in a splenectomy, as well as chest and other injuries. (R. 319.) In August 2001, four months before the claimed onset date, Huff complained to his doctor at Village Family Physicians ("Village") of right shoulder pain, stemming from a car accident many years ago. (R. 261.) One month later, a Village physician administered a steroid injection into Huff's shoulder, which provided immediate pain relief, and referred him to physical therapy. (R. 260.)

In January 2002, when Huff told his physician that he planned to apply for disability, the doctor diagnosed obesity, arthritis of the spine, and a history of insomnia and depression. (R. 260.) Huff indicated that he did not need an anti-depressant. (R. 260.) Huff returned to the doctor in June 2002, and the doctor noted that Nuerontin had been effective for his back pain. (R. 243.) Huff's next doctor visit, in July 2003, was "really unremarkable." (R. 240.) At the next visit one year later, in July 2004, Huff reported using Tylenol #3 sporadically for arthritic pain. (R. 238.) He complained of lower leg discomfort starting in the knee and constant left leg paresthesia, but declined a neurological consult. (R. 238.) He also denied any major cardiovascular changes. (R. 238.)

In February 2006, Dr. Delhi, a Village physician, conducted a physical exam of Huff. (R. 237.) Huff reported that "[h]e still has some construction work that he's involved with." Id.

5

Huff continued to take Tylenol #3 for arthritic pain "sporadically and infrequently." Id. His left leg nerve damage stemming from the earlier car accident caused a little bit of numbness, but no present major dysfunction. (R. 237.) Dr. Delhi diagnosed tobacco use, osteoarthritis, COPD, insomnia, and suspected peripheral neuropathy. (R. 237.) This was the first mention of COPD in Huff's medical records. At that appointment, Huff "denie[d] any major problems with [COPD]," and his only treatment for COPD was use of an Albuterol inhaler on a "p.r.n." (as needed) basis. (R. 237.)

Huff visited the doctor again on September 25, 2006, for wheezing due to allergies. (R. 236.) He had been living in Florida developing a real estate project and came into contact with red tide and pollen, which caused allergies and wheezing. Huff reported that he had cut down on smoking but had not ceased tobacco use. The doctor's report does not mention COPD. (R. 236.) Huff was admitted to the hospital from October 10 to October 12, 2006, for acute alcohol intoxication. (R. 197-98.) He was found unconscious and had a blood alcohol content of .313 when he was admitted. (R. 198.) He required ventilatory support due to his decreased level of consciousness, and he suffered an acute exacerbation of his COPD because of the intoxication. (R. 197-98.) He also tested positive for marijuana. (R. 197-98.)

Huff's last doctor visit during his insured period was on November 27, 2006. (R. 234.) An X-ray showed mild cardiomegaly, and Dr. Dehli diagnosed COPD. (R. 234.) Dr. Delhi's notes acknowledge that Huff "thinks he does great with the Spiriva" treatments for COPD. (R. 234.) A pulmonary function test showed moderate-severe obstructive problems with significant improvement with bronchodilator use. On December 5 and December 9, 2006, it appears that a treating physician or staff member wrote notes reporting that Huff's COPD was showing

"significant improvement with bronchilator" and that "taking nebulizers" was "making a big difference." (R. 235.)

In February 2007, just two months after Huff's date last insured, Village physician Janice Luth, M.D., reported that nebulizer treatments had been remarkably beneficial for Huff's COPD. (R. 255, 283.) Huff continued Tylenol #3 for arthritis and Lexapro for depression, but was doing great mentally. (R. 255, 283.) On June 18, 2007, Huff was examined and X-rayed, and Dr. Parham Fox at Radiology Consultants reported that the X-ray showed that Huff's lungs were "stable from prior exam. No superimposed acute cardiopulmonary disease." (R. 342.)

On July 27, 2007, Dr. Virginia Blanks treated Huff for COPD, asthma, nausea, chills, and boils, which were caused by or exacerbated by a recent trip to Pennsylvania where Huff had helped a friend clean up property. (R. 356.) Dr. Blanks opined that "[a]t this point, I really do feel he is disabled." (R. 356.) However, Dr. Blanks is not a pulmonologist and had not yet consulted a pulmonologist as evidenced by her notes that she still needed to consult with Dr. Johnson in order to get pulmonary function studies and understand Huff's condition better.

The record shows that Huff's COPD worsened during 2007, after he was no longer insured under the Act. On September 21, 2007, Huff was treated by a pulmonologist for the first time since his diagnosis of COPD. Dr. Johnson, the pulmonologist, reported that Huff had an acute exacerbation of COPD with fluid in his lungs and bronchitis. (R. 319-21.) On January 8, 2008, Dr. Delhi noted that Huff's COPD was severe. (R. 252.) On September 22, 2008, twenty months after the date last insured, Dr. Johnson saw Huff for COPD and a "restrictive component" that he believes was exacerbating the COPD. He opined that Huff was disabled because his COPD was severe, and that his COPD, frequent bouts of bronchitis, congestion, and wheezing, precluded his ability to work. (R. 385-87.)

Additionally, from before December 15, 2001, the alleged onset of disability, until at least March 23, 2008, Huff continued to smoke against the advice of all treating physicians. (R. 321.)

Although the ALJ found that Huff suffered from severe impairments during the period he was insured, substantial evidence supports the ALJ's finding that Huff was not disabled under the Act. First, two state agency physicians independently reviewed Huff's file in 2007. Dr. Williams found that Huff could perform medium exertional work but needed to avoid fumes, odors, dust, gas, other pulmonary irritants, and work hazards, such as machinery. (R. 225, 228.) Dr. Surrusco agreed. (R. 311, 313.) Both physicians found that Huff could occasionally lift 50 pounds and frequently lift 25 pounds, could stand or walk for six hours in an eight hour workday, and could sit for about six hours in an eight hour workday. (R. 224, 311.) Both physicians found that Huff had no postural, manipulative, or visual limitations. (R. 225, 312.)

Objective medical evidence supports the state agency physicians' opinion that Huff could perform medium work and the ALJ's reliance on that opinion. From 2001 to 2005, the medical records show that Huff visited Village for non-serious health issues, usually dealing with pain. Huff generally responded well to the prescribed treatments. Huff was not diagnosed with COPD until 2006, and at that point he denied any major problems with COPD and treated it successfully by using an inhaler as needed. Throughout 2006 and the first half of 2007, Huff's medical records show that he responded well to his COPD treatments. Huff's own doctors' records show that they never felt that Huff was disabled until July 2007, seven months after his date last insured.

Second, two state agency reviewing psychologists separately reviewed Huff's file in 2007. Both concluded that there was no evidence to establish that Huff's depression was severe

8

enough to render him disabled. (R. 221, 308.) In fact, both psychologists found that his depression did not limit his activities of daily living or social functioning, and it only mildly limited his ability to concentrate. (R. 218, 305.)

Third, Huff's own statements show that he was not completely disabled during the relevant time. During the relevant period, Huff traveled to Florida to work at his "business headquarters with a friend." (R. 253, 281.) He also reported "living in Florida developing a real estate project." (R. 236.) Huff also testified to helping a friend clean up his property in Pennsylvania, (R. 356), and on February 8, 2006, he told a Village Physician that he was still involved with some construction work. (R. 237.) During the same visit, the physician's record notes that Huff "denies any major problems with [COPD]." (R. 237.)

Finally, the ALJ provided legitimate reasons for declining to give controlling weight to Huff's treating physicians' opinions that he was disabled. The opinion of a treating source is not always entitled to great deference or greater weight. The regulations explain that when an opinion is not given controlling weight, the ALJ will "apply the factors listed [below]...in determining the weight to give the opinion." Id. Relevant factors are the supportability of the opinion, as determined by the evidence presented by the medical source, and consistency of the opinion with the record as a whole. See 20 C.F.R. § 404.1527(d)(3), (4). For example, contradictory persuasive evidence can discredit a treating physician's opinion. See Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986) ("A treating physician's testimony is ignored *only* if there is persuasive contradictory evidence.") (emphasis in original). Finally, a treating physician's opinion is not given any special deference when the opinion relates to the claimant's ability to work or her RFC. See 20 C.F.R. § 404.1527(e)(2) ("Although we consider opinions

from medical sources on issues such as. . . your residual functional capacity. . . the final responsibility for deciding these issues is reserved to the Commissioner.").

Three major reasons support the ALJ's decision not to adopt the treating sources' opinions that Huff was disabled. First, the disability statements of Huff's treating sources concern periods of time well after his date last insured under the Act, and these statements do not appear to relate back to the time period when Huff was insured. Family Nurse Practitioner Eugene Amstutz opined that Huff was disabled on August 27, 2008, (R. 371), based on his chronic bronchitis and severe COPD, but there is no indication on the Pulmonary Residual Functioning Capacity Questionnaire he completed that Huff was in the same condition prior to his date last insured on December 31, 2006. While Huff had been seen by Village staff for some years, the "frequency and length of contact" portion of FNP Amstutz's report states "8/27/08 – 1 hour." Thus, this opinion on its face does not concern the insured period, which ended some twenty months prior to the opinion. Dr. Johnson opined that Huff was disabled on September 5, 2008, based on visits of September 21, 2007, October 5, 2007, and September 5, 2008. (R. 382.) Dr. Johnson's notes state that Huff had a chest X-ray on September 2, 2008 demonstrating emphysema. Dr. Johnson wrote that he "[c]an't comment much about the chronic pain, but he can certainly say that the COPD is very significant and would seem to preclude his ability to work." (R. 387.) Dr. Johnson's opinion also on its face does not concern the insured period, which ended approximately twenty months before his opinion was rendered.

Second, the treating sources' physical evaluations contradict objective medical evidence, including evidence found in the treatment records of the treating physicians. The treating physicians' records include observations that Huff engaged in activities such as mowing, traveling to Florida and Pennsylvania, and helping a friend clean up property, subsequent to

expiration of insured status, and their records do not indicate that Huff had major limitations using his arms, hands, or neck. However, the treating sources, in their disability statements, opine that Huff can never use his hands to grip objects or his arms to reach, (R. 366), and he can never use his neck to look up, down, turn his head right or left, or keep his head in a static position. Therefore, the treating sources' opinions are given less weight under 20 C.F.R. 404.1527(d)(3) because they are not supported or corroborated by objective medical evidence. (R. 385.)

Third, much of the treating sources' opinions relate to Huff's ability to work and RFC, which are administrative findings "reserved for the Commissioner." 20 C.F.R. § 404.1527(e)(2). In some treating source evaluations, the treating source simply checked boxes consistent with a disability with no medical explanation. On other places where the questionnaire requested an explanation of Huff's physical abilities, the treating source wrote "[Not applicable] as [patient] is unable to pursue gainful employment." (R. 365.)

Taken as a whole, the record contains sufficient evidence to support the ALJ's decision that Huff was not totally disabled.[2]

B. This Case Should not be Remanded to the Commissioner

Pursuant to sentence six of 42 U.S.C. § 405(g), a reviewing court may remand a case to the Commissioner upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. See Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). Evidence is new if it is relevant to the determination of disability at the time the application was first filed and not merely cumulative.

---

[2] In reaching this conclusion, the undersigned is mindful that the ALJ erred in stating that Huff "is able to return to her past relevant work as a cashier." (R. 29.) Huff is male and there is no evidence he worked as a cashier. This error is harmless, however, as two sentences earlier the ALJ's decision states that Huff had the capacity to return to his past relevant work as a construction contractor, (R. 28), and this finding is supported by substantial evidence.

11

Borders, 777 F.2d at 955; see also Wilkins v. Sec'y Dept. Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) ("Evidence is new within the meaning of this section if it is not duplicative or cumulative."). It is material if there is a reasonable possibility that the new evidence would have changed the outcome. Wilkins, 953 F.2d at 96; Borders, 777 F.2d at 955. There must be a good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner, and the claimant must present to the remanding court at least a general showing of the nature of the new evidence. Borders, 777 F.2d at 955.

After this suit was filed, Huff submitted additional evidence to the Court to support his claim consisting of the following: (1) the affidavit of Heather Olszyk ("Olszyk"), Huff's daughter, which mostly contains references to Huff's condition after December 31, 2006, and (2) Huff's medical records from doctor visits between August 2008 and March 2010. This evidence is not "new evidence" under sentence six because all of the medical records and most of Olszyk's testimony only relate to Huff's condition after his date last insured. Some parts of Olszyk's testimony relate to events or conditions that are relevant to the period Huff was insured, but this information was already included in the record for the ALJ to consider. Therefore, none of the evidence should be considered new.

Even if Huff's recently filed evidence was considered new evidence, there is no reasonable probability that it would have changed the outcome of his determination by the ALJ, and therefore, the evidence is immaterial. First, the majority of the affidavit of Heather Olszyk contains an account of Huff's ailments from 2007 to 2010, with no explanation of how those ailments prove Huff was disabled prior to the date last insured. Although the affidavit does mention a few events that took place before the date Huff was last insured, the events Olszyk

mentions that are relevant to Huff's disability determination are already in the record and have been considered by the ALJ.

Second, the new medical records Huff submitted are immaterial to his disability determination. The earliest medical record details a doctor visit in August 2008, approximately 20 months after the date Huff was last insured under the Act. Neither Huff's memorandum nor the medical records claim that they are relevant to Huff's health during the period he was insured under the Act. The medical records, like Olszyk's affidavit, are immaterial, and therefore, this case will not be remanded to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g).

## IV

At the end of the day, it is not the province of the court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence, and, in this case, substantial evidence supports the ALJ's decision. In recommending that the final decision of the Commissioner be affirmed, the undersigned does not suggest that Huff is free from all infirmity. Careful review of the medical records compels the conclusion that Huff has not met his burden of establishing that he was totally disabled from all forms of substantial gainful employment before the date last insured under the Act. The ALJ properly considered all of the subjective and objective factors in adjudicating Huff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence.

The Clerk is directed to transmit the record in this case to Hon. Norman K. Moon, Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is

not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 637(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk is also directed to send a copy of this Report and Recommendation to all counsel of record for the Commissioner, to plaintiff Huff, and to his daughter, Heather Olszyk.

Entered: November 22, 2010.

/s/ Michael F. Urbanski

Michael F. Urbanski
United States Magistrate Judge